UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LAWRENCE IRVIN GREEN,<br><br>Defendant. | <br><br><br><br>Criminal Action No. TDC-10-0761 |

## MEMORANDUM OPINION

Pending before the Court is Defendant Lawrence Irvin Green's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 326. In his Motion, Green seeks a reduction of his sentence under a statutory provision commonly referred to as the "compassionate release" provision because of the COVID-19 pandemic and the health risk that exposure to the coronavirus would pose to him in light of his various medical conditions. The Government opposes the Motion.

## BACKGROUND

In 2012, Green was sentenced to a total of 72 months of imprisonment for conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and aggravated identity theft, in violation of 18 U.S.C. § 1028A. After serving this sentence, Green commenced a five-year term of supervised release on May 13, 2016, which was scheduled to expire on May 12, 2021. On October 30, 2019, Green pleaded guilty to seven violations of conditions of supervised release ("VOSRs") relating to the possession or use of controlled substances, failing to participate in substance abuse treatment, and stealing beer from a supermarket. On January 27, 2020, this Court accepted the parties' joint recommendation and sentenced Green to 14 months of imprisonment for these violations, with no additional term of supervised release. Having been detained on alleged VOSRs

since September 17, 2019, Green has now served approximately eight and a half months of the 14-month sentence and has a scheduled release date of September 3, 2020. As of the filing of the Motion, Green had never been designated to a Bureau of Prisons ("BOP") facility to serve his sentence and instead has been serving his sentence at the Correctional Treatment Facility of the D.C. Jail in Washington, D.C. ("CTF").

## DISCUSSION

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c) (2018). This general rule is subject to certain exceptions, including the compassionate release provision, which allows the BOP to seek a modification of a prisoner's sentence. *See id.* § 3582(c)(1)(A). Under the First Step Act of 2018, the compassionate release provision was modified to also allow prisoners to seek a sentencing reduction directly from the Court. The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that:
>
> (1)  in any case that—
>
> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)  extraordinary and compelling reasons warrant such a reduction;
>
> \*   \*   \*
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

2

*Id.* Green argues that the COVID-19 pandemic presents "extraordinary and compelling reasons" warranting a sentence reduction to time served.

## I. Exhaustion of Administrative Remedies

On April 23, 2020, Green sent a request for compassionate release under this provision in light of the COVID-19 pandemic to the Warden of the D.C. Jail ("the Warden"). Although the D.C. Jail is not a BOP facility, where Green had not yet been incarcerated at a BOP facility, the Court finds that a request sent to the Warden can meet the exhaustion requirement of "the lapse of 30 days from the receipt of [a compassionate release] request by the warden of the defendant's facility" before the Court may consider a compassionate release request. 18 U.S.C. § 3582(c)(1)(A). The Government does not argue to the contrary. Even accounting for any delay in the request reaching the Warden, more than 30 days have elapsed since the request was sent and received. Accordingly, the Court finds that Green has satisfied the statutory exhaustion requirement.

## II. Extraordinary and Compelling Reasons

As applied to Green, the COVID-19 pandemic presents "extraordinary and compelling reasons" that warrant the modest sentencing reduction requested. As of June 3, 2020, the pandemic had resulted in 6,397,294 cases worldwide and 383,872 deaths. Coronavirus Disease (COVID-19) Pandemic, World Health Org., https://www.who.int/emergencies/diseases/novel-coronavirus-2019, last visited June 4, 2020. In the United States, as of June 3, 2020, it has resulted in 1,827,425 cases and 106,202 deaths. Cases in U.S., Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html, last visited June 4, 2020. In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention

facilities is particularly high. *See Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) (citing expert opinions). Thus, even with mitigation measures implemented by the BOP, as of June 3, 2020, among BOP inmates and correctional staff, there were 6,271 cases resulting in 73 deaths. *See COVID-19: Coronavirus*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp, last visited June 4, 2020.

Significantly, Green has been incarcerated at CTF within the D.C. Jail, a facility that has been one of the hardest hit by COVID-19. According to the independent report submitted to the United States District Court for the District of Columbia in a civil action challenging the constitutionality of the conditions of confinement at the D.C. Jail, *Banks v. Booth*, No. 20-849-CKK (D.D.C. 2020), as of April 16, 2020, 65 detainees or inmates had tested positive at D.C. Jail, out of a total of approximately 1,020 inmates. There were 57 positive tests within CTF, the part of the D.C. Jail in which Green has been housed, which had approximately 400 detainees, for a rate of 14 percent. One detainee and one correctional staff member had died of COVID-19. The rate of infection at D.C. Jail was seven times higher than that of Washington, D.C. generally. In *Banks*, United States District Judge Colleen Kollar-Kotelly granted in part a Motion for a Temporary Restraining Order based in part on the finding that, after the review by independent investigators of the conditions at D.C. Jail, there was a likelihood of success on the merits of the claim that the conditions of confinement violated the rights of detainees to due process under the Fourteenth Amendment to the United States Constitution and of inmates under the Eighth Amendment by failing to adequately protect their health and safety. *See* Mem. Op. Mot. TRO at 22, *Banks v. Booth*, No. 20-849-CKK (D.D.C. Apr. 19, 2020) (ECF No. 49).

Among other findings, the court concluded that as of the date of its Order, the D.C. Jail had failed to implement contact tracing when correctional staff tested positive; had been slow to

respond to inmates displaying symptoms of COVID-19 such as fever and coughing; did not properly seal off quarantined inmates from the general population and require proper use of masks and gloves for those present in the quarantine unit; and left inmates in isolation for having tested positive in draconian conditions without access to showers or laundry services. *Id.* at 19-21. It also found that the D.C. Jail had acted slowly to, and had failed to, operationalize and enforce social distancing measures needed to avoid an unreasonable risk to the health of detainees, as illustrated in part by the fact that it allowed 40 inmates to congregate three weeks into the pandemic. *Id.* at 14-15, 19. The court also found that there were likely errors in the use of thermometers to screen incoming visitors and staff, and some housing units lacked sufficient cleaning supplies and sufficient guidance on how to sanitize that resulted in "[c]hallenges with cleanliness" outside of inmates' cells. *Id.* at 18. The court therefore concluded that the evidence supported the conclusion that the D.C. Jail acted with deliberate indifference to inmate health and safety because it was aware of the risks of COVID-19 but "disregarded those risks by failing to take comprehensive, timely, and proper steps to stem the spread of the virus." *Id.* at 22.

Although the court did not order the immediate release or transfer of detainees, it ordered as a first step certain remedial actions, including that the D.C. Jail improve the triage process for suspected cases of COVID-19, provide proper cleaning supplies to each unit in the facility, and implement social distancing measures. *Id.* at 27-28, 30. At a hearing on May 11, 2020, the independent investigators reported to Judge Kollar-Kotelly on compliance with those requirements and on the present conditions at the D.C. Jail. The investigators reported that the peak of cases at CTF was on April 5, 2020, and there was a two-week period of no new cases in CTF from April 16 to May 1, 2020. As of May 8, 2020, there were only four detainees with positive tests in isolation in the infirmary, and there were no longer any dedicated isolation units in CTF. D.C. Jail

overall continued to have a dedicated isolation unit, and all but two of its housing units were quarantine units.

The investigators reported some improvements in the ability of detainees to submit sick call request forms but noted continuing delays for some detainees in obtaining such forms and being seen after such requests. There were improvements in detainees' access to telephones, but the ability to make confidential legal calls remained limited. Detainees in isolation had more access to showers and clean clothes, but access to cleaning supplies remained a problem, with detainees continuing to use t-shirts to clean. Although detainees' time outside their cells is very limited, social distancing once detainees are outside of their cells has not been implemented to any significant degree.

Thus, although the conditions at CTF appear to be improving, the presence of COVID-19 remains a significant danger. From April 16 to April 22, 2020, the number of cases at the D.C. Jail had increased from 65 to 104. *See* Public Safety Agency COVID-19 Case Data, https://coronavirus.dc.gov/page/public-safety-agency-covid-19-case-data, visited Apr. 23, 2020. Between April 22 and May 21, 2020, the overall number of cases increased to 187. *Id.*, visited May 21, 2020. Since May 21, the number of positive cases has increased to 206. *Id.*, visited June 4, 2020. Thus, while the rate of growth has slowed, and 183 of those 206 detainees have now recovered and are out of isolation, COVID-19 remains a serious threat to the health and safety of Green and the other inmates and detainees at the D.C. Jail.

Moreover, Green has asserted that he has health conditions that place him at greater vulnerability to COVID-19. Green is 55 years old and has a documented history of asthma that has required medication, as well as other significant medical issues. *See Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention,

6

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html, last visited June 4, 2020 (identifying moderate to severe asthma as a high-risk condition). Although it is unclear whether his asthma is sufficiently severe to allow for official classification of Green at high risk, the Court finds that the historic COVID-19 pandemic, the fact that Green has been incarcerated in one of the detention facilities most profoundly impacted by COVID-19, and the fact that he has a health condition that may place him at high risk for serious illness collectively establish "extraordinary and compelling reasons" within the meaning of 18 U.S.C. § 3582(c)(1)(A). In light of the extreme circumstances of Green's incarceration to date, the Court so finds regardless of whether Green has since been designated or transferred to another facility during the pendency of the Motion.

The Court must also consider whether the factors set forth in 18 U.S.C. § 3553(a) support a sentence reduction. Although the underlying conspiracy and aggravated identity theft crimes were serious in that they resulted in multiple individual victims and approximately $38,000 in losses to a bank, the offenses occurred over 11 years ago, were non-violent, and Green has already served his primary sentence for those offenses. The present sentence is based on his VOSR conviction, which was based on his drug use, failure to attend drug treatment, and theft of beer while on supervised release. Though any violations of conditions of release are serious, the nature and circumstances of the present offense are markedly less serious than for prisoners serving time for violent offenses. After providing a reasonable period of time, under the emergency circumstances necessitating a prompt resolution of the Motion, for input from the victims of the underlying offenses, the Court has not received any information establishing a continued threat to victims and has been informed that one victim has expressed the view that Green need not be further incarcerated.

As for the history and characteristics of Green, he has a lengthy criminal history and was unwilling or unable to abide by conditions of release, which prompted the high-end sentence on the VOSR conviction, but his record consists primarily of theft crimes and low-level drug offenses, not violent crimes or serious drug trafficking. Although Green has incurred certain infractions while at CTF, they do not appear to have been significant enough to push back his release date.

Where the sentencing guidelines range on the present VOSR conviction was 8 to 14 months, U.S.S.G. § 7B1.4(a), and Green has served 8 and a half months of his 14-month sentence, Green has already served a guidelines sentence on this offense. Given this fact, and where based on his current release date of September 3, 2020, Green has already served over 70 percent of the time he would have otherwise served and seeks an effective reduction of only three months, the Court finds that the proposed reduction would not diminish the seriousness of the offense or respect for the law, nor will it adversely affect deterrence or increase the risk to the public. The fact that Green has been incarcerated at CTF during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction. Indeed, the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing. Accordingly, the Court finds that the requested reduction is warranted upon consideration of the § 3553(a) factors.

Finally, the Court finds that the requested sentencing reduction is consistent with "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Although the relevant policy statement in the sentencing guidelines identifies certain specific scenarios under which a sentence reduction could be warranted, it nevertheless permits a reduction based only on meeting the broad category of "extraordinary and compelling reasons." U.S.S.G. §

1B1.13(1)(A) & app. note 1(D).  Since the First Step Act changed the law to allow a compassionate release reduction to be granted by the Court without input from the BOP, the pre-First Step Act references in the policy statement to determinations by the BOP are outdated and not binding.  *See, e.g.*, *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019).  Notably, the policy statement that a defendant not receive a sentencing reduction if the defendant presents a danger to any individual or the community is satisfied where Green's criminal history, the original offense of conviction, and the violations of conditions of supervised release underlying the present offense, reflect that he is not a violent offender.  U.S.S.G. § 1B1.13(2).

Accordingly, the Court will grant the Motion and reduce Green's sentence to time served, effective 14 days from the date of this Order.  For public health reasons, Green must be quarantined during that 14-day period to mitigate the risk that Green contracts the coronavirus and transmits it to others upon his release.  The Court finds that such a reduction is warranted under 18 U.S.C. § 3582(c)(1)(A) and is in the interests of justice.

## CONCLUSION

For the foregoing reasons, Green's Emergency Motion for Compassionate Release, ECF No. 326, will be GRANTED.  A separate Order shall issue.


Date:   June 4, 2020                                          /s/ *Theodore D. Chuang*
                                                              THEODORE D. CHUANG
                                                              United States District Judge